IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

THE ESTATE OF ROOSEVELT PERNELL, JR., DECEASED,
BY AND THROUGH DEBRA P. SIMMONS,
INDIVIDUALLY, AND AS ADMINISTRATRIX                                    PLAINTIFF

VS.                                                      CIVIL ACTION NO.: 1:08CV0040-DD

CITY OF COLUMBUS, RICK JONES, HEATH BEARD,
LISA YOUNGER NEESE, IN HER OFFICIAL CAPACITY
AS THE CHANCERY CLERK FOR LOWNDES COUNTY,
MISSISSIPPI; HARRY S. SANDERS, IN HIS OFFICIAL
CAPACITY AS PRESIDENT OF THE LOWNDES COUNTY
BOARD OF SUPERVISORS; and C.B. HOWARD, IN HIS
OFFICIAL CAPACITY AS SHERIFF OF LOWNDES COUNTY,
MISSISSIPPI; and CHANTICLEER APARTMENTS,
AND JOHN DOES 1-20                                                     DEFENDANTS

<u>OPINION GRANTING COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT</u>

Presently before this Court is County Defendants', Lisa Younger Neese, in her official capacity as Chancery Clerk of Lowndes County, Mississippi, Harry S. Sanders in his official capacity as President of the Lowndes County Board of Supervisors, and C.B. Howard in his official capacity as Sheriff of Lowndes County, Mississippi, all sued only in official capacities, on behalf of Lowndes County, Mississippi, Motion for Summary Judgment. After reviewing the motion, responses, pleadings, rules, and authorities, the Court makes the following findings:

*A. Factual and Procedural Background*

Shortly after midnight on the morning of February 21, 2007, 911 received calls from residents at the Chanticleer Apartments in Columbus, Mississippi reporting a heavily intoxicated man yelling and banging on residents' doors, claiming to be the police in one instance, in an attempt to gain access to apartments. One resident stated that Pernell had fallen face first on the concrete floor before the Officers had arrived. Sergeant Rick Jones, Officer Heath Beard and

Corporal Casey Freeman of the City of Columbus Police Department responded to the 911 call. When the Officers arrived at the Chanticleer Apartments, they found Roosevelt Pernell, Jr. ("Pernell") sitting on the apartment steps. Pernell smelled of alcohol and had slurred speech. They determined he was intoxicated and arrested Pernell for public drunkenness. According to audio recordings taken at the scene of the arrest, Roosevelt had fresh blood in his mouth and his jaw and his eye were swollen. At the time of Pernell's arrest, Sergeant Jones, in his statement, noted that there were no other signs that Pernell "was in any type of distress." The City of Columbus does not have its own jail; therefore, around 12:45 a.m. Corporal Freeman transported Pernell to the Lowndes County Adult Detention Center ("LCADC") pursuant to an Interlocal Agreement between the City of Columbus and Lowndes County. Before placing Pernell into the custody of the LCADC, Corporal Freeman asked Pernell if he wanted to go to the hospital but he refused.

Pernell was taken to the booking area once he arrived at the LCADC. Sergeant Victor Salter was the supervising officer and Officer James A. Reyes was the booking officer on duty when Pernell arrived. Sergeant Salter observed Pernell was intoxicated, staggering, smelled of alcohol and had a swollen jaw and bruised face. As part of the booking process, Officer Reyes completed a two page medical form based on his observations and assessment of Pernell. On the LCACD booking medical form for Pernell, Officer Reyes answered "yes" where it asked whether the inmate appears to be under the influence of drugs or alcohol and "no" where it asked whether the inmate had visible signs of trauma or obvious pain which required immediate medical attention. Officer Reyes signed the booking medical form and wrote "to intoxicated to sign" on the inmate's signature line. Pernell was able to walk and stand, be photographed, answer questions related to address, medical conditions and other general information which

were asked before LCACD took Pernell into custody. During the booking process, Sergeant Salter and Officer Reyes asked Pernell if he wanted to go to the hospital but Pernell refused. Sergeant Salter confirmed under oath that Pernell has been offered medical treatment at least four times in his presence but that Pernell refused each time. Pernell responses were to the effect, "no, I don't want to. I just want to lay down." Pernell was also quoted as saying, "I want to do my time, lay down." In addition, Officer Reyes' states in the Incident Report dated February 24, 2007 (Exhibit 8), that "Upon entering the facility I observed inmate Pernell very unsteady on his feet and also a swollen jaw and also what appeared to be bruising to the left side of his face. (Exhibit 8) Furthermore, in Officer Freeman's statement, he says that Roosevelt complained of his head hurting and wanting pain medication at the scene of the arrest, in transit to the jail and upon arrival at the booking area. Officer Reyes also stated in the February 24, 2007, Incident Report (Exhibit 8), that he overheard Roosevelt ask for pain medication and state that he just wanted to lie down. Officer Freeman also advised Officer Reyes at the time of booking that he believed Roosevelt may have been beat up prior to his arrest and that Roosevelt thought he was still in West Point.

Pernell was booked on the charge of public drunkenness, was given a mat and placed in cell H-7, the holding cell for intoxicated detainees. Sometime around 4:05 a.m., Eric Dumas was put into cell H-7 with Pernell. Dumas testified in a statement that when he entered the cell he noticed Pernell was lying on his back and was snoring loudly. Dumas stated that he had been in the cell for approximately ten minutes when he noticed Pernell had vomited and yelled for help. The evidence shows that it was actually around 4:58 a.m. when Dumas actually summoned help. Sergeant Salter and another officer went to cell H-7 to check on Pernell. Sergeant Salter transported Pernell to the open-air "center cage" where Pernell could be observed.

3

Sergeant Salter contacted jail nurse Sarah Rickert and informed her that Pernell has thrown-up, was snoring loudly and had refused medical treatment. Around 5:14 a.m. Nurse Rickert informed Sergeant Salter to put Pernell on medical watch until he sobered up and was released. Later, Officers entered the cell and rolled Pernell back onto his side. Pernell remained in the "center-cage" until approximately 10:57 a.m. when paramedic Kay Watts was called to booking to check on Pernell who was still snoring. At approximately 11:06 a.m., Watts checked Pernell and found he had a strong pulse and his blood sugar was normal. Watts turned Pernell over and he stopped breathing. Watts began CPR with a bag and mask and 911 was called. The ambulance arrived and Pernell was placed on a stretcher around 11:28 a.m. Watts and another officer rode in the ambulance with Pernell to Baptist Memorial Hospital Golden Triangle ("BMHGT) in Columbus.

Pernell was examined and treated at BMHGT by Lon Alexander, M.D. Dr. Alexander noted that Pernell had an acute subdural hematoma, bifrontal contusion, raccoon's eye denoting orbital fracture, and hemotympanum and battle's sign denoting basilar skull fracture.

Dr. Alexander noted that he advised the family that if they wanted him to conduct surgery, they had a "'Golden Hour', which actually had already passed" but that he did not think that had the surgery been performed within the "Golden Hour" that there would have been positive results. Plaintiff, Pernell's sister, and her family were later told at the hospital that Pernell was brain dead. The next day, on February 22, 2007, Roosevelt died after he was removed from life support. A subsequent autopsy showed the cause of death to be "craniocerebral trauma" and the medical reports from the hospital characterized the cause of death as an "invisible subdural hematoma" or "invisible bleed." In her deposition, Plaintiff

acknowledges that Pernell's death was not caused by the bruised jaw or swollen eye that the Columbus Police Officers could see.

On January 30, 2009, Debra P. Simmons filed the Complaint (Second Amended) alleging the Muncipal Defendants, Lowndes County, Rick Jones and Heath Beard claiming Pernell's rights were violated by depriving him medical care and treatment, which resulted in his death. Plaintiff claims that such acts and omissions of these Defendants violate rights secured to Pernell under the Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution.

On February 10, 2009, the Municipal Defendants filed their Answer and Defenses. Defendants filed their Motion for Summary Judgment on October 14, 2009. In their Motion for Summary Judgment, the individual Defendants assert a qualified immunity defense while the City of Columbus asserts the absence of any policy, practice or custom to support liability.

*B. Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to

"go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324; *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

*C. Discussion*

*i.   Plaintiff's Claim for Res Ipsa Loquitor*

Plaintiff's Count I is a claim titled *Res Ipsa Loquitor* which is a common law tort. All common law and state law claims are covered by the Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. § 11-46-1, et seq. The MTCA preserves sovereign immunity with regard to the claims of jail inmates and bars, as a matter of law, claims arising while a claimant was an inmate of a detention center. *See* Miss Code Ann.§ 11-46-9(1)(m). In *Liggans v. Coahoma County Sheriff's Dept.*, 823 S.2d 1152, 1155 (Miss. 2002), the Fifth Circuit found that Liggins, who had not been convicted of a crime but was a pre-trail detainee at the time of her injuries, was considered a jail inmate as there is no distinction between convicted and non-convicted inmates for purposes of the MTCA. 823 S.2d at 1155. Pernell, who had not been convicted of a crime, was an inmate in the LCACD during the time in which the alleged violations occurred, therefore the MTCA bars Plaintiff's common law and state law claims. In addition, Plaintiff failed to address this claim in her opposition to Defendants' motion. Thus, Plaintiff has waived any such

6

claims and summary judgment is proper. *See Dubose v. Oustalet*, 738 F. Supp. 188, 189 n.1 (S.D. Miss. 1990) (plaintiffs waived claims for which they made no argument in their response). Therefore, the Court finds that Plaintiff's claim for *Res Ipsa Loquitor* fails.

     *ii. Plaintiff's Claims under the Fifth, Eighth and Ninth Amendments*

Plaintiff alleges County defendants violated Pernell's Fifth, Eighth and Ninth Amendment rights by depriving "him adequate or competent medical treatment, care and facilities" as well as by allegedly failing to instruct, supervise and train employees.

The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor. Neither the United States, nor any federal agencies or actors are a named party in this suit. *See Jones v. City of Jackson*, 230 F.3d 875, 880 (5th Cir. 2000) (citing *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996)). Therefore, the Court finds that Plaintiff's Fifth Amendment claim fails.

Defendants address the issue of "cruel and unusual punishment" at great length in the memorandum brief in support of the motion for summary judgment. The Court is of the opinion that such discussion is unnecessary. The Eighth Amendment it was designed to protect those convicted of crimes and only applies to convicted prisoners. *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S. Ct. 1401, 1409, 51 L. Ed. 2d 711 (1977). *See also Scott v. Moore*, 85 F.3d 230, 234-35 (5th Cir. 1996); *Ortega v. Rowe*, 796 F.2d 765, 767 (5th Cir. 1986). The Supreme Court has held that the "primary purpose of (the Cruel and Unusual Punishments Clause) has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes..." *Powell v. Texas*, 392 U.S. 514 531-32, 88 S.Ct. 2145, 2154, 20 L.Ed.2d 1254 (1968) (plurality opinion). The Supreme Court has also found that in the "few cases where the Court has had occasion to confront claims that impositions outside the criminal

7

process constituted cruel and unusual punishment, it has had no difficulty finding the Eighth Amendment inapplicable." *Ingraham v. Wright*, 430 U.S. at 668-69, 97 S. Ct. at 1410. Pernell was a pretrial detainee not a convicted prisoner. Therefore, the Court finds Plaintiff's Eighth Amendment claim also fails.

The Ninth Amendment does not specify any substantive constitutional rights and consequently is not an avenue by which a plaintiff can bring civil rights claims. See *Canton Branch of N.A.A.C.P. v. Runnels*, 617 F. Supp. 607, 609 n. 3 (S.D. Miss. 1985). A Section 1983 claim "based solely on alleged Ninth Amendment rights must fail because there are no constitutional rights secured by that amendment." *Charles v. Brown*, 495 F.Supp. 862, 864 (N. D. Ala.1980); Runnels, 617 F.Supp. at 609 n.3. *See also Richardson v. Sewerage & Water Board*, 1996 WL 288275 (E.D. La. 1996). Accordingly, the Court finds Plaintiff's Ninth Amendment claim fails.

In addition, Plaintiff failed to address Defendants' arguments regarding Plaintiff's Fifth, Eighth and Ninth Amendment claims or take issue in any fashion with Defendants' arguments and controlling legal authority cited regarding those claims. Thus, Plaintiff has waived any such claims and summary judgment is proper. *See Dubose v. Oustalet*, 738 F. Supp. 188, 189 n.1 (S.D. Miss. 1990). The Court finds Plaintiff's Fifth, Eighth and Ninth Amendment claims are properly dismissed.

   iii. *Plaintiff's Fourteenth Amendment Claim under 42 U.S.C. § 1983*

In order to establish liability against Lowndes County under §1983, for violating Pernell's constitutional rights, Plaintiff must identify a policy[1] or custom which caused the

---

[1] An official policy is "either a policy statement, ordinance, regulation, etc., that has been officially adopted by a policymaker, or a persistent, widespread practice of officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipality's policy." *Brumfield v. Hollins*, 551 F.3d 322, 327 n.3 (5th Cir. 2008).

constitutional deprivation. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978). To prevail on her liability claim under §1983, Plaintiff must establish 1) a policy 2) of the city's policymaker 3) that caused 4) the plaintiff to be subjected to a deprivation of constitutional right. *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 169 (5th Cir. 1985). Similarly, an isolated incident is not sufficient to show that a custom exists. As the Fifth Circuit stated in *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984) (en banc), cert. denied, 472 U.S. 1016, 105 S. Ct. 3476, 87 L. Ed. 2d 612 (1985), "Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy." 728 F.2d at 768 n. 3. The Supreme Court has elaborated on the causal requirement by holding that the connection must be more than *de facto*; the policy or custom must be "the moving force of the constitutional violation." *Monell v. New York City Dept. of Social Services*, 436 U.S. at 694, 98 S. Ct. at 2037. *See also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S. Ct. 2427, 2433-34, 85 L. Ed. 2d 791 (1985) (plurality opinion); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

A fundamental requirement of any §1983 claim is the existence of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 330, 106 S. Ct. 662, 664, 88 L. Ed. 2d 662 (1986). Therefore, "[t]he first inquiry in any section 1983 suit is whether the plaintiff has been deprived of a -right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 139, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979) (*quoting* 42 U.S.C. § 1983). Plaintiff claims Defendants violated Pernell's constitutional rights by depriving him of medical care. "Pretrial detainees have a constitutional right, under the due process clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials" *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001).

To show that the right to medical care has been violated, a Plaintiff must establish that the official had subjective knowledge of a substantial risk of serious harm to the pretrial detainee, but responded with deliberate indifference. *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996); *Blair v. City of Cleveland*, 148 F. Supp. 2d 894 (N.D. Ohio 2000). Plaintiff must prove that Defendant knew of and disregarded an excessive risk to Pernell's health or safety. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). Deliberate indifference is more than mere negligence in failing to supply medical treatment. *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). For deliberate indifference, a plaintiff must prove objective deliberate indifference to the medical needs of Roosevelt Pernell. Deliberate indifference is shown where a Plaintiff can establish that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Dominoe v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Plaintiff argues that Pernell's visible physical injuries to his face along with the fact Pernell stated he just wanted to lie down and he thought he was in West Point when he was arrested evinced the County Officer's wanton disregard for Pernell's serious medical needs.

During the booking process, Officer Reyes and Sergeant Salter both observed Pernell. The evidence shows that the Officers smelled alcohol on Pernell and he acted in conformity with a heavily intoxicated person in that he had slurred speech, was unsteady on his feet, was disoriented and wanted to lie down, assumedly to sleep it off. Additionally, the Officers asked Pernell if he needed to go to the hospital and he said that he just wanted to lie down. Pernell never answered that he needed to go to the hospital, that he needed to see a doctor or that he needed medical attention of any sort. Sergeant Salter also stated that he offered Pernell over the

counter Tylenol and ibuprofen but that Pernell did not take it. Before Pernell was placed in cell H-7, Officers asked Pernell several times if he wanted or needed to go to the hospital but he refused each time. Pernell was placed in cell H-7 shortly after 1:00 a.m. He was again observed in cell H-7, when an additional inmate was added to cell H-7 at approximately 4:00 a.m. Pernell was observed sleeping and snoring loudly. Officers were notified around 4:40 a.m. by the other inmate that Pernell had vomited. Nurse Rickert was called and after she was advised of Pernell's condition, she instructed Sergeant Salter to put Pernell on medical watch, in the center-cage where he could be under constant supervision and to place Pernell on his side in the event he vomited again. At approximately 4:58 a.m., Pernell was moved to the center-cage and was under constant supervision until he was transported to BMGTH. The record also shows that officers checked on Pernell and at one point attempted to awaken him by using an ammonia pac. Nurse Rickert testified that she reviewed the instructions she gave Sergeant Salter with Dr. Stanback and he approved of her course of action.

Sometime around 11:00 a.m., Sergeant Phillips contacted paramedic Kay Watts after he attempted to wake Pernell up but Pernell did not respond. Watts went into the center-cage and found that Pernell was on his side, snoring and he had spit-up a clear liquid. Watts checked his pulse and blood sugar which were both normal. Watts and Sergeant Phillips then rolled Pernell onto his back and Pernell began vomiting and stopped breathing. Pernell was immediately rolled back onto his side and Watts began giving Pernell artificial breathes which she continued during the ambulance ride to the hospital where the hospital personnel took over.

Plaintiff relies on what Dr. Alexander's told her and what his history and physical report stated that he had a "'golden hour', which had actually already passed" to perform surgery on Pernell to support her claims against Defendants. However, Dr. Alexander's statement

11

continued, "but that had I intervened, I doubt that there would have been a meaningful outcome." In addition, Dr. Alexander's report further shows that Plaintiff herself delayed surgery being performed on Pernell despite Dr. Alexander's warning to Plaintiff that "any delay will make any decision to proceed with surgery utterly academic."

The Court is of the opinion that there is nothing in the record that shows that the Officers refused to treat him, ignored his complaints, treated him incorrectly or acted in such a manner as to have a wanton disregard for Pernell's serious medical needs. Plaintiff admits in her deposition that the Officers had no knowledge that Pernell had suffered such trauma to his head to cause an "invisible brain bleed" which ultimately caused his death. Without knowledge of Pernell's injury, the Officers could not act with deliberate indifference or wanton disregard for Pernell's medical needs. The evidence also shows that later it was discovered that in addition to alcohol, Pernell had cocaine and ecstasy in his system which could have and almost assuredly contributed to and intensified his intoxicated symptoms. Once Officers realized Pernell's condition had worsened the paramedic Watts was contacted.

Pernell's medical condition and treatment were also reviewed by Defendants' expert witness physician, Dr. John Dial, Jr. Dr. Dial reviewed the medical records from BMGTH along with the autopsy and steps Officers at LCADC took in relation to Pernell's medical treatment. In Dr. Dial's professional opinion, stated to a reasonable degree of medical certainty and probability, Lowndes County did not exhibit deliberate indifference to Pernell's medical needs. Dr. Dial found that Pernell's condition was caused by a slow, invisible bleeding of his brain that was unknown until the autopsy and therefore nothing could have prevented his death. Based on all of the foregoing, the Court finds that Plaintiff has failed to prove that Pernell's right to

medical care was violated and that Defendants acted with deliberate indifference to Pernell's medical needs.

Assuming, *arguendo*, Plaintiff had proven that Pernell's constitution rights had been violated or that Defendants acted with deliberate indifference, Plaintiff would next have to show a policy of Lowndes County which caused Pernell's constitutional rights to be violated. Plaintiff first asserts that the official policy behind the violation of Pernell's rights is the Lowndes County Adult Detention Center Pre-trial Policies and Procedures for Inmate Medical Services. The Policies and Procedures state that Lowndes County Adult Detention Center will reasonably provide medical services to inmates as circumstances dictate and as deemed necessary by the visiting physician. Furthermore, the Policies and Procedures state that an initial intake evaluation will be done and that any inmate brought into the facility will be medically evaluated before being accepted into the facility. Arriving detainees determined to be in need of critical or emergency medical care will not be accepted into the facility, will remain in the custody of the arresting or transporting officer, and taken to the appropriate treatment center to be evaluated. Also, before the booking process is completed, the personnel will complete a medical screening of the inmate and complete the medical portion of the intake form. Plaintiff argues that Defendants violated these policies and procedures. However, the record reflects that Defendants acted in conformity with them. When Pernell was brought into the booking area of LCADC, Officer Reyes filled out a medical intake form after observing Pernell and asking Pernell questions regarding his medical history and present condition. Officer Reyes determined based on his observations that Pernell was not in need of critical or emergency medical attention and therefore, circumstances did not necessitate physician care or transportation to BMGTH. Nothing in the policies and procedures requires that a licensed medical professional perform the

medical intake evaluation. The Court finds that there is nothing in the record to show that Defendants violated the Pre-trial Policies and Procedures for Inmate Medical Services.

Plaintiff argues that Defendants showed deliberate indifference by custom or policy for failure to provide any medical staff at the jail on weekends and that has been the practice for the past thirteen years (13) or more. Plaintiff alleges not having medical staff at the jail over the weekends is a breach of the County's duty, custom, policy and procedure and a depravation of Pernell's constitutional rights to have competent medical treatment. The evidence shows that Nurse Rickert and Dr. Stanback were both on-call at the time Pernell was in LCADC. Nurse Ricker was contacted regarding Pernell's condition and based on Pernell's symptoms, put him on medical watch. Paramedic Watts was on-duty when she was contacted regarding Pernell's condition when Officers became worried about Pernell. Watts visited Pernell in the center-cage where she checked his vitals and administered CPR to Pernell when he stopped breathing on his own. There is nothing in the record which reflects that Pernell had injuries that were more serious than his swollen jaw and eye that required immediate medical attention or equated to an emergency. There is also no evidence which would alert the Officers that Pernell had a brain bleed which would eventually cause his death. Plaintiff attempts to impute the knowledge and duty of a trained medical professional upon the Officers, which is beyond that required of the average police officer by the due process clause. *Burns v. City of Galveston, Texas*, 905 F.2d 100, 104 (5th Cir. 1990). Therefore, the Court finds that Plaintiff has failed to prove that a policy or custom caused Pernell's right to medical care to be violated.

Plaintiff next argues that due to Sergeant Salter's reprimands and written warnings that Sheriff Howard acted with deliberate indifference to Pernell's rights. The record shows that Sergeant Salter was cited for failure to maintain a safe and secure environment, failure to provide

adequate supervision to staff and unauthorized use of equipment and files. However, nothing in the record shows that any of the circumstances surrounding Sergeant's Salter's warnings, reprimands and suspension had anything to do with the manner in which an inmate was medically evaluated or medical needs or care. Therefore, the Court is not persuaded by this argument.

      iv.    *Plaintiff's Negligence/Gross Negligence Claims under 42 U.S.C. § 1983*

Plaintiff claims the Defendants were negligent and/or grossly negligent in their deprivation of medical care to Pernell and in the instruction, supervision and training of its employees. The Plaintiff's reliance on negligence and even gross negligence is misplaced. The United States Supreme Court has held that Section 1983 is designed to address abusive governmental conduct and not the negligent/grossly negligent acts. *Daniels v. Williams*, 474 U.S. at 330, 106 S. Ct. at 664; *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S. Ct. 668, 670, 88 L.Ed.2d 677 (1986). No such claims are cognizable under 42U.S.C. § 1983. *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). The Fifth Circuit has further held that negligence and gross negligence are insufficient to serve as a basis for a Section 1983 claim. *See Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Stewart v. Murphy*, 174 F.2d 530, 534 (5th Cir. 1999). *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645 (5th Cir. 1996) (*en banc*). No matter whether the evidence shows negligence or even gross negligence on the part of Defendants, there is no basis for Section 1983 liability and the Court therefore finds Plaintiff's claims of negligence and/or gross negligence fail.

      v.    *Plaintiff's Claim Under Agency Theory*

Plaintiff asserts all Defendants were acting on the behalf of the other under paragraph IV titled Agency. *Respondeat Superior* also does not apply to 42 U.S.C. § 1983 as a matter of law

and agency is likewise inapplicable as causation is a requirement of 42 U.S.C. § 1983. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). In addition, Plaintiff failed to address Defendants' argument and as such has waived any claim under agency theory or respondeat superior. Therefore, the Court finds that any claim relying on agency theory or respondeat superior fail as a matter of law.

      vi.  *Plaintiff's Claim for Failure to Train or Supervise*

Plaintiff argues that Lowndes County is liable for its deliberate indifference in failing to train and/or supervise its employees. Plaintiff asserts in the Second Amended Complaint that Defendant County, through the Sheriff, had a duty to employ "competent jailors and a Medical Staff to provide competent care and treatment to inmates detained at the facility" and to "instruct, supervise, and train their employees and agents to assure the treatment and medical care to [Pernell] which conforms to the standards of medical care in the community as a whole and to transport [Pernell] to a qualified health care facility in a timely manner."

In order for Lowndes County, Mississippi to be liable under 42 U.S.C. § 1983, Plaintiff must demonstrate: (1) an official policy or custom (2) of which the policy maker may be charged with knowledge (3) that is the moving force behind a constitutional violation. *Pineda v. City of Houston*, 291 F. 3d 325, 328 (5th Cir. 2002); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The Fifth Circuit requires more than "a single instance of lack of training or supervision causing a violation of constitutional rights" to amount to deliberate indifference. *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)(citations omitted). Rather, "the plaintiff must generally demonstrate at least a pattern of similar violations." *Thompson v. Upshur County, Tx.*, 245 F.3d 447, 459 (5th Cir. 2001). Inadequacy of police training can serve as a basis for liability under Section 1983 only if the failure to train amounts to a deliberate

indifference to the rights of the individuals who come into contact with the police. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). The Fifth Circuit has held that there is no liability for a failure to train claim when the training meets the state standards, absent a showing that the legal minimum of training was inadequate to enable the officers to deal with the situations they face. *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992) (quoting *City of Canton*, 489 U.S. at 388).

The Plaintiff claims that the County's practice of over thirteen years of not having medical staff at LCADC over the weekends constitutes a pattern of similar violations. As *Thompson* requires, the Plaintiff has fatally failed to show such alleged deficiencies resulted in even a single similar alleged violation or alleged deprivation of medical care. Plaintiff has failed to provide any evidence that would show that the Lowndes County failed to properly train and/or supervise its employees or that the Officers were not properly trained. The record shows that Officer Reyes had been certified in jail training by the States of Texas and Mississippi and had other extensive training including first aid. Nurse Rickert was a battlefield medic for the United States military and is a licensed practical nurse. Paramedic Watts has worked as a paramedic for over 20 years at Baptist Memorial Regional Medical Center. Both Nurse Rickert and paramedic Watts were supervised by Dr. Charles Stanback, a licensed physician. As for any further specialized and/or medical training, as stated above, the officers have no duty to diagnose which requires the skills of an experienced medical professional which is an ability beyond that required of the average officer by the due process clause. *See Burns v. City of Galveston, Texas*, 905 F.2d 100, 104 (5th Cir. 1990). In accordance with *Thompson*, Plaintiff's meager assertion that Defendants violated a duty owed to Pernell is insufficient to impute liability to Defendant Lowndes County for an alleged failure to supervise or train. Additionally, Plaintiff has failed to

show there was violation of Pernell's constitutional rights that support a claim against Lowndes County. Therefore, the Court holds that the Plaintiff has failed to state a claim against Lowndes County for a failure to train and/or supervise employees.

       *vii.*    *Plaintiff's Claims Against Sheriff Howard in his Official Capacity*

Defendant Howard is sued in his official capacity as Sheriff of Lowndes County. The "real party in interest in an official capacity suit is the government entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361, 116 L. Ed. 2d 301 (1991). The Fifth Circuit has specifically held that suits against a sheriff in his official capacity should be treated as a suit against the county. *Brooks v. George County, Miss.*, 84 F.3d 157, 165 (5th Cir. 1996). The Court has addressed Lowndes County's liability above. Therefore, summary judgment is proper on Plaintiff's claims against Sheriff Howard in his official capacity.

                                      D.    Conclusion

In sum, the Court finds there are no genuine issues of material fact as to Plaintiff's claims and Defendants, Lisa Younger Neese, in her official capacity as the Chancery Clerk for Lowndes County, Mississippi; Harry S. Sanders in his official capacity as President of the Lowndes County Board of Supervisors; and C.B. Howard, in his official capacity as Sheriff of Lowndes County, Mississippi are entitled to judgment as a matter of law on all claims. Defendants' motion for summary judgment will be granted.

A separate order in accordance with this opinion shall issue this day.

This the 37 day of April, 2010.

*[signature]*
Senior Judge