IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

THE ESTATE OF ROOSEVELT PERNELL, JR., DECEASED,
BY AND THROUGH DEBRA P. SIMMONS,
INDIVIDUALLY, AND AS ADMINISTRATRIX          PLAINTIFF

VS.                                          CIVIL ACTION NO.: 1:08CV0040-DD

CITY OF COLUMBUS, RICK JONES, HEATH BEARD,
LISA YOUNGER NEESE, IN HER OFFICIAL CAPACITY
AS THE CHANCERY CLERK FOR LOWNDES COUNTY,
MISSISSIPPI; HARRY S. SANDERS, IN HIS OFFICIAL
CAPACITY AS PRESIDENT OF THE LOWNDES COUNTY
BOARD OF SUPERVISORS; and C.B. HOWARD, IN HIS
OFFICIAL CAPACITY AS SHERIFF OF LOWNDES COUNTY,
MISSISSIPPI; and CHANTICLEER APARTMENTS,
AND JOHN DOES 1-20                           DEFENDANTS

OPINION GRANTING MUNICIPAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Presently before this Court is Defendants', City of Columbus, Rick Jones and Heath Beard, Motion for Summary Judgment. After reviewing the motion, responses, pleadings, rules, and authorities, the Court makes the following findings:

*A. Factual and Procedural Background*

Shortly after midnight on the morning of February 21, 2007, 911 received calls from residents at the Chanticleer Apartments in Columbus, Mississippi reporting a heavily intoxicated man yelling and banging on residents' doors, claiming to be the police in one instance, in an attempt to gain access to apartments. One resident stated that Pernell had fallen face first on the concrete floor before the Officers had arrived. Sergeant Rick Jones, Officer Heath Beard and Corporal Casey Freeman of the City of Columbus Police Department responded to the 911 call. When the Officers arrived at the Chanticleer Apartments, they found Roosevelt Pernell, Jr. ("Pernell") sitting on the apartment steps. Pernell smelled of alcohol and had slurred speech.

They determined he was intoxicated and arrested Pernell for public drunkenness. According to audio recordings taken at the scene of the arrest, Roosevelt had fresh blood in his mouth and his jaw and his eye were swollen. At the time of Pernell's arrest, Sergeant Jones, in his statement, noted that there were no other signs that Pernell "was in any type of distress." The City of Columbus does not have its own jail; therefore, around 12:45 a.m. Corporal Freeman transported Pernell to the Lowndes County Adult Detention Center ("LCADC") pursuant to an Interlocal Agreement between the City of Columbus and Lowndes County. Before placing Pernell into the custody of the LCADC, Corporal Freeman asked Pernell if he wanted to go to the hospital but he refused.

Pernell was taken to the booking area once he arrived at the LCADC. Sergeant Victor Salter was the supervising officer and Officer James A. Reyes was the booking officer on duty when Pernell arrived. Sergeant Salter observed Pernell was intoxicated, staggering, smelled of alcohol and had a swollen jaw and bruised face. As part of the booking process, Officer Reyes completed a two page medical form based on his observations and assessment of Pernell. On the LCACD booking medical form for Pernell, Officer Reyes answered "yes" where it asked whether the inmate appears to be under the influence of drugs or alcohol and "no" where it asked whether the inmate had visible signs of trauma or obvious pain which required immediate medical attention. Officer Reyes signed the booking medical form and wrote "to intoxicated to sign" on the inmate's signature line. Pernell was able to walk and stand, be photographed, answer questions related to address, medical conditions and other general information which were asked before LCACD took Pernell into custody. During the booking process, Sergeant Salter and Officer Reyes asked Pernell if he wanted to go to the hospital but Pernell refused. Sergeant Salter confirmed under oath that Pernell has been offered medical treatment at least

four times in his presence but that Pernell refused each time. Pernell responses were to the effect, "no, I don't want to. I just want to lay down." Pernell was also quoted as saying, "I want to do my time, lay down." In addition, Officer Reyes' states in the Incident Report dated February 24, 2007 (Exhibit 8), that "Upon entering the facility I observed inmate Pernell very unsteady on his feet and also a swollen jaw and also what appeared to be bruising to the left side of his face. (Exhibit 8) Furthermore, in Officer Freeman's statement, he says that Roosevelt complained of his head hurting and wanting pain medication at the scene of the arrest, in transit to the jail and upon arrival at the booking area. Officer Reyes also stated in the February 24, 2007, Incident Report (Exhibit 8), that he overheard Roosevelt ask for pain medication and state that he just wanted to lie down. Officer Freeman also advised Officer Reyes at the time of booking that he believed Roosevelt may have been beat up prior to his arrest and that Roosevelt thought he was still in West Point.

Pernell was booked on the charge of public drunkenness, was given a mat and placed in cell H-7, the holding cell for intoxicated detainees. Sometime around 4:05 a.m., Eric Dumas was put into cell H-7 with Pernell. Dumas testified in a statement that when he entered the cell he noticed Pernell was lying on his back and was snoring loudly. Dumas stated that he had been in the cell for approximately ten minutes when he noticed Pernell had vomited and yelled for help. Sergeant Salter and another officer went to cell H-7 to check on Pernell. At approximately 4:58 a.m., Sergeant Salter transported Pernell to the open-air "center cage" where Pernell could be observed.

Sergeant Salter contacted jail nurse Sarah Rickert and informed her that Pernell has thrown-up, was snoring loudly and had refused medical treatment. Around 5:14 a.m. Nurse Rickert informed Sergeant Salter to put Pernell on medical watch until he sobered up and was

released. Pernell remained in the "center-cage" until approximately 10:57 a.m. when paramedic Kay Watts was called to booking to check on Pernell who was still snoring. At approximately 11:06 a.m., Watts checked Pernell and found he had a strong pulse and his blood sugar was normal. Watts turned Pernell over and he stopped breathing. Watts began CPR with a bag and mask and 911 was called. The ambulance arrived and Pernell was placed on a stretcher around 11:28 a.m. Watts and another officer rode in the ambulance with Pernell to Baptist Memorial Hospital Golden Triangle ("BMHGT) in Columbus.

Pernell was examined and treated at BMHGT by Lon Alexander, M.D. Dr. Alexander noted that Pernell had an acute subdural hematoma, bifrontal contusion, raccoon's eye denoting orbital fracture, and hemotympanum and battle's sign denoting basilar skull fracture.

Dr. Alexander noted that he advised the family that if they wanted him to conduct surgery, they had a "'Golden Hour', which actually had already passed" but that he did not think that had the surgery been performed within the "Golden Hour" that there would have been positive results. Plaintiff, Pernell's sister, and her family were later told at the hospital that Pernell was brain dead. The next day, on February 22, 2007, Roosevelt died after he was removed from life support. A subsequent autopsy showed the cause of death to be "craniocerebral trauma" and the medical reports from the hospital characterized the cause of death as an "invisible subdural hematoma" or "invisible bleed." In her deposition, Plaintiff acknowledges that Pernell's death was not caused by the bruised jaw or swollen eye that the Columbus Police Officers could see.

On January 30, 2009, Debra P. Simmons filed the Complaint (Second Amended) alleging the Municipal Defendants, Lowndes County, Rick Jones and Heath Beard claiming Pernell's rights were violated by depriving him medical care and treatment, which resulted in his death.

Plaintiff claims that such acts and omissions of these Defendants violate rights secured to Pernell under the Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution.

On February 10, 2009, the Municipal Defendants filed their Answer and Defenses. Defendants filed their Motion for Summary Judgment on October 14, 2009. In their Motion for Summary Judgment, the individual Defendants assert a qualified immunity defense while the City of Columbus asserts the absence of any policy, practice or custom to support liability.

*B. Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at 324; *Willis v. Roche Biomedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995); *Littlefield v. Forney Indep. Sch. Dist.,* 268 F.3d 275, 282 (5th Cir. 2001). That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). Conclusory

allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

*C. Discussion*

    i.    *Plaintiff's Claims under the Fifth, Eighth and Ninth Amendments*

Plaintiff alleges Municipal defendants violated Pernell's Fifth, Eighth and Ninth Amendment rights by depriving "him adequate or competent medical treatment, care and facilities" as well as by allegedly failing to instruct, supervise and train employees.

The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor. The United States, nor any federal agencies or actors are a named party in this suit. *See Jones v. City of Jackson*, 230 F.3d 875, 880 (5th Cir. 2000) (citing *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Therefore, the Court finds that Plaintiff's Fifth Amendment claim fails.

The Eighth Amendment it was designed to protect those convicted of crimes and only applies to convicted prisoners. *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S. Ct. 1401, 1409, 51 L. Ed. 2d 711 (1977). *Scott v. Moore*, 85 F.3d 230, 234-35 (5th Cir. 1996); *Ortega v. Rowe*, 796 F.2d 765, 767 (5th Cir. 1986). The Supreme Court had held that the "primary purpose of (the Cruel and Unusual Punishments Clause) has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes..." *Powell v. Texas*, 392 U.S. 514 531-32, 88 S.Ct. 2145, 2154 20 L.Ed.2d 1254 (1968) (plurality opinion). The Supreme Court has also found that in the "few cases where the Court has had occasion to confront claims that impositions outside the criminal process constituted cruel and

6

unusual punishment, it has had no difficulty finding the Eighth Amendment inapplicable." *Ingraham v. Wright*, 430 U.S. at 668-69, 97 S. Ct. at 1410. Pernell was a pretrial detainee not a convicted prisoner. Therefore, the Court finds Plaintiff's Eighth Amendment claim also fails.

The Ninth Amendment does not specify any substantive constitutional rights and consequently is not an avenue by which a plaintiff can bring civil rights claims. See *Canton Branch of N.A.A.C.P. v. Runnels*, 617 F. Supp. 607, 609 n. 3 (S.D. Miss. 1985). A Section 1983 claim "based solely on alleged Ninth Amendment rights must fail because there are no constitutional rights secured by that amendment." *Charles v. Brown*, 495 F.Supp. 862, 864 (N. D. Ala.1980); Runnels, 617 F.Supp. at 609 n.3. *See also Richardson v. Sewerage & Water Board*, 1996 WL 288275 (E.D. La. 1996). Accordingly, the Court finds Plaintiff's Ninth Amendment claim fails.

In addition, Plaintiff failed to address Defendants' arguments regarding Plaintiff's Fifth, Eighth and Ninth Amendment claims or take issue in any fashion with Defendants' arguments and controlling legal authority cited regarding those claims. Thus, Plaintiffs have waived any such claims and summary judgment is proper. See *Dubose v. Oustalet*, 738 F. Supp. 188, 189 n.1 (S.D. Miss. 1990) (plaintiffs waived claims for which they made no argument in their response); *See also Wilkinson v. Mayor and Aldermen of City of Vicksburg*, 2007 WL 1032353 (S.D. Miss.2007). The Court finds Plaintiff's Fifth, Eighth and Ninth Amendment claims are waived and summary judgment shall be granted.

    ii.    *Plaintiff's Fourteenth Amendment Claim under 42 U.S.C. § 1983*

In order to establish liability against the City of Columbus under §1983, for violating his constitutional rights, Plaintiff must identify a policy[1] or custom which caused the constitutional

---

[1] An official policy is "either a policy statement, ordinance, regulation, etc., that has been officially adopted by a policymaker, or a persistent, widespread practice of officials or employees, which although not authorized by

deprivation. *Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978). To prevail on her liability claim under §1983, Plaintiff must establish 1) a policy 2) of the city's policymaker 3) that caused 4) the plaintiff to be subjected to a deprivation of constitutional right. *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 169 (5th Cir. 1985). The Supreme Court has elaborated on the causal requirement by holding that the connection must be more than *de facto*; the policy or custom must be "the moving force of the constitutional violation." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978). *See also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S. Ct. 2427, 2433-34, 85 L. Ed. 2d 791 (1985) (plurality opinion); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

A fundamental requirement of any §1983 claim is the existence of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 330, 106 S. Ct. 662, 664, 88 L. Ed. 2d 662 (1986). Therefore, "[t]he first inquiry in any section 1983 suit is whether the plaintiff has been deprived of a -right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 139, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979) (*quoting* 42 U.S.C. § 1983). Plaintiff claims Defendants violated Pernell's constitutional rights by depriving him of medical care. "Pretrial detainees have a constitutional right, under the due process clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials" *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001).

To show that the right to medical care has been violated, a Plaintiff must establish that the official had subjective knowledge of a substantial risk of serious harm to the pretrial detainee, but responded with deliberate indifference. *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir.

---

officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipality's policy." *Brumfield v. Hollins*, 551 F.3d 322, 327 n.3 (5th Cir. 2008).

1996), *Blair v. City of Cleveland*, 148 F. Supp. 2d 894 (N.D. Ohio 2000). Deliberate indifference is shown where a Plaintiff can establish that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Dominoe v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Plaintiff argues that Pernell's visible physical injuries to his face along with the fact Pernell stated he just wanted to lie down and he thought he was in West Point when he was arrested evinced City of Columbus Police Officers' wanton disregard for Pernell's serious medical needs. However, the Court is of the opinion that there is nothing in the record that shows that the Officers refused to treat him, ignored his complaints, treated him incorrectly or acted in such a manner as to have a wanton disregard for Pernell's serious medical needs. The Officers, which Plaintiff admits in her deposition, had no knowledge that Pernell had suffered such trauma to his head to cause an "invisible brain bleed" which ultimately killed him. In addition, without knowledge of Pernell's injury, the Officers could not act with deliberate indifference or wanton disregard for Pernell's medical needs. The evidence shows that the Officers smelled alcohol on Pernell and he acted in conformity with a heavily intoxicated person in that he had slurred speech, was unsteady on his feet, was disoriented and wanted to lie down, assumedly to sleep it off. Additionally, the Officers asked Pernell if he needed to go to the hospital and he said that he just wanted to lie down and that if they were going to take him to jail, then to put him in jail. Pernell never answered that he needed to go to the hospital, that he needed to see a doctor or that he needed medical attention of any sort. The evidence also shows that later, it was discovered that in addition to alcohol, Pernell had cocaine and ecstasy in his system which could have and almost assuredly contributed to and intensified his intoxicated

symptoms. Therefore, the Court finds that Plaintiff has failed to prove that Pernell's right to medical care was violated.

Assuming, *arguendo*, Plaintiff had proven that Pernell's constitution rights had been violated, Plaintiff would next have to show a policy of the City of Columbus which caused Pernell's constitutional rights to be violated. Plaintiff argues that Defendants violated their Written Directive, subject, Legal Processes, with deliberate indifference by failing and refusing to transport Roosevelt to BMHGT for treatment of his injuries. The Written Directive merely states that if a detainee is sick or in need of a doctor's care, the detainee will be taken to BMHGT before being the detainee can be accepted into LCACD. Plaintiff further argues that Defendants violated the Interlocal Agreement, however the Interlocal Agreement is silent on the issue of medical There is nothing in the record which reflects that Pernell had injuries that were more serious than his swollen jaw and eye nor is there any evidence in the record which would alert the Officers that Pernell had a brain bleed which would eventually cause his death. Plaintiff attempts to impute the knowledge and duty of a trained medical professional upon the Police Officer Defendants in this case. However, the Fifth Circuit has long held officers have no duty to diagnose, which requires the skills of an experienced medical professional which is an ability beyond that required of the average police officer by the due process clause. *Burns v. City of Galveston, Texas*, 905 F.2d 100, 104 (5th Cir. 1990). Therefore, the Court finds that Plaintiff has failed to prove that a City of Columbus policy or custom caused Pernell's right to medical care to be violated.

    iii.    *Plaintiff's Negligence/Gross Negligence Claims under 42 U.S.C. § 1983*

Plaintiff claims the Defendants were negligent and/or grossly negligent in their deprivation of medical care to Pernell and in the instruction, supervision and training of its

employees. The Plaintiff's reliance on negligence and even gross negligence is misplaced. The United States Supreme Court has held that Section 1983 is designed to address abusive governmental conduct and not the negligent/grossly negligent acts. *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S. Ct. 668, 670, 88 L.Ed.2d 677 (1986). In addition, the Fifth Circuit has also held that negligence and gross negligence are insufficient to serve as a basis for a Section 1983 claim. *See Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *See also Stewart v. Murphy*, 174 F.2d 530, 534 (5th Cir. 1999). *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645 (5th Cir. 1996) (*en banc*). No matter whether the evidence shows negligence or even gross negligence on the part of Defendants, there is no basis for Section 1983 liability and the Court therefore finds Plaintiff's claims of negligence and/or gross negligence fail.

### iv. *Plaintiff's Claim for Failure to Train or Supervise*

Plaintiff argues that the City of Columbus is liable for its deliberate indifference in failing to train and/or supervise its employees. A municipality may incur § 1983 liability for its employees' acts when a municipal policy of hiring or training causes those acts. In order to prove that a municipal hiring or training policy violated his rights under § 1983, Plaintiff must show that (1) the training of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused the plaintiff's injury. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1205-07, 103 L.Ed.2d 412 (1989). However, inadequacy of police training can serve as a basis for liability under Section 1983 only if the failure to train amounts to a deliberate indifference to the rights of the individuals who come into contact with the police. *City of Canton, Ohio v. Harris*, 489 U.S. at 388, 109 S.Ct. at 1205. The Supreme Court has held

that a municipality acts with "deliberate indifference" in adopting a policy if "in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id. See also Wassum v. City of Bellaire, Texas*, 861 F.2d 453, 456 (5th Cir. 1988) (plaintiff must show that hiring practice constituted "gross negligence amounting to conscious indifference to the welfare of the public"). The Fifth Circuit has held that there is no liability for a failure to train claim when the training meets the state standards, absent a showing that the legal minimum of training was inadequate to enable the officers to deal with the situations they face. *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992) (quoting *City of Canton*, 489 U.S. at 388). Besides the mere assertion in Plaintiff's Complaints, Plaintiff has neglected to specifically allege exactly how Defendant City of Columbus failed to train and/or supervise employees. In addition, Plaintiff has failed to provide any facts or evidence that would show that the City of Columbus failed to properly train and/or supervise its employees or that Sergeant Jones and Officer Beard were not properly trained. The record reflects that both Officers attended and graduated from the Mississippi law enforcement academy and are certified law enforcement officers. As for any further specialized and/or medical training, as stated above, the officers have no duty to diagnose which requires the skills of an experienced medical professional which is an ability beyond that required of the average police officer by the due process clause. *See Burns v. City of Galveston, Texas*, 905 F.2d 100, 104 (5th Cir. 1990). Therefore, the Court holds that the Plaintiff has failed to state a claim against Defendant City of Columbus for a failure to train and/or supervise its employees.

### v. *Plaintiff's Claims Against Sergeant Jones and Officer Beard in Their Official Capacities*

Plaintiff fails to state in both her original Complaint and in her two Amended Complaints, in which capacity Sergeant Jones and Officer Beard are sued. In Defendants' Answer to Plaintiff's Second Amended Complaint, it was expressly asserted that the two individual defendants were not being sued in their individual capacities. Under Section 1983 jurisprudence, unless a Complaint specifically alleges individual capacity liability, a governmental employee is considered sued in their official capacity only. *Hafer v. Melo*, 502 U.S. 21, 24-25, 112 S. Ct. 358, 361 n. 1, 116 L.Ed.2d 301 (1991) (when no capacity is specified in a complaint, then the suit is presumed to be an official capacity action only); *Wells v. Brown*, 891 F.2d 591, 592-93 (6th Cir. 1989) ("It is not too much to ask that if a person or entity is to be subject to suit, the person or entity should be properly named and clearly notified of the potential for payment of damages individually.").

Defendants Sergeant Jones and Officer Beard are also sued in their official capacities as Police Officer of the City of Columbus Police Department. The "real party in interest in an official capacity suit is the government entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361, 116 L. Ed. 2d 301 (1991). The Fifth Circuit has specifically held that suits against a sheriff in his official capacity should be treated as a suit against the county. *Brooks v. George County, Miss.*, 84 F.3d 157, 165 (5th Cir. 1996). Therefore, it follows that suits against officers in their official capacities should be treated as suits against the city. As such, any claims against the two officers are in actuality claims against the City of Columbus only. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 468 (5th Cir. 1999). Therefore, summary judgment is proper on Plaintiff's claims against the Officers in their official capacities.

### vi. Qualified Immunity

Though the Court is of the opinion it need not address Defendants' qualified immunity defense since it found Defendants Sergeant Jones and Officer Beard are being sued in their official capacity and such suit is against the City of Columbus, it will do so out of an abundance of caution.

Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right. *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). The defendants must initially plead their good faith and establish that they were acting within the scope of their discretionary authority. *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). Once the defendants have done so, the burden shifts to the plaintiff to rebut this defense by establishing that the officials' allegedly wrongful conduct violated clearly established law. *Id.*

A claim of qualified immunity requires the court to engaged in a two-step analysis. The court must first determine whether the defendant has violated an actual constitutional right. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). If the answer is "no," the analysis ends. *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007). If the answer is "yes," then the court must consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Id.* at 411. The standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citations omitted).

The Court's analysis is quite short in that Plaintiff, as discussed previously, has failed to show that Defendants violated Pernell's constitutional rights and therefore, Defendants are

entitled to qualified immunity. However, the Court will addresses the second prong, were the Defendants' actions objectively unreasonable in light of the clearly established law. Defendants Sergeant Jones and Officer Beard responded to a 911 call that a heavily intoxicated man was attempted to gain access into apartments even claiming to be the Police in at least one instance. The Officers arrived to find Pernell smelling of alcohol and exhibiting intoxicated characteristics such as slurred speech, being unsteady on his feet and disoriented as to where he was. Pernell did have a swollen jaw and eye but did not want to go to the hospital to seek medical attention for the swelling. There is nothing in the record, nor does Plaintiff assert any facts, that would show Defendants had any information or knowledge that would make them aware that Pernell suffered from a brain injury that would ultimately cause his death. The Court finds Defendants' actions in arresting Pernell and transporting him to LCACD were objectively reasonable in light of clearly established law and the circumstances known to them at the time.

### D. Conclusion

In sum, the Court finds there are no genuine issues of material fact as to Plaintiff's claims and Defendants, City of Columbus, Rick Jones and Heath Beard are entitled to judgment as a matter of law on all claims. Defendants' motion for summary judgment will be granted.

A separate order in accordance with this opinion shall issue this day.

This the 27 day of April, 2010.

_____
Senior Judge